| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, COLORADO<br>Court Address: 1437 Bannock Street, Denver, CO 80202<br>Phone: 720-865-8301 | DATE FILED: June 5, 2015 1:12 PM<br>FILING ID: F5BF40B490F90<br>CASE NUMBER: 2015CV32018 |
| PATRICIA AND BRANDON STEWART,<br><br>Plaintiffs,<br><br>vs.<br><br>GEICO CASUALTY COMPANY<br><br>Defendant | •COURT USE ONLY• |
| ATTORNEY(S):<br>Name:      Reeves D. Whalen, Reg. No. 40189<br>               Jacob M. Burg, Reg. No. 47766<br>Attorneys: Plaintiff<br>Address:  Burg Simpson Eldredge Hersh & Jardine, P.C.<br>               40 Inverness Drive East<br>               Englewood, Colorado, 80112<br>Phone No.: (303) 792-5595<br>Fax No.:   Declined pursuant to C.R.C.P. 5(b)<br>E-Mail:    rwhalen@burgsimpson.com<br>               jburg@burgsimpson.com | Case No.<br><br>Ctrm/Div: |
| **COMPLAINT AND JURY DEMAND** | |

COME NOW, Plaintiffs Brandon and Patricia Stewart, by and though their attorneys BURG SIMPSON ELDREDGE HERSH & JARDINE, P.C., for their Complaint and Jury Demand, state and allege as follows:

## PARTIES

1. Plaintiffs Brandon and Patricia Stewart are citizens and residents of the City and County of Douglas, Colorado residing at 21671 E. Tallkid Ave. Parker, CO 80138.

2. Defendant Geico Casualty Company, (hereinafter "GEICO") is a foreign corporation licensed to do business in the State of Colorado with its principal place of business at One Geico Blvd. Fredericksburg, VA 22412. The office of its registered agent is The Division of Insurance at 1560 Broadway, Denver, CO 80202.


EXHIBIT A

## II. JURISDICTION AND VENUE

3. The Constitution of the State of Colorado provides that the District Court shall be the trial Court of record with general jurisdiction and shall have original jurisdiction over all civil, probate, and criminal matters, except as otherwise provided by statute and shall have jurisdiction as may be prescribed by law under the Constitution of the State of Colorado, Article VI, Section IX. Personal jurisdiction is proper pursuant to C.R.S. § 13-1-124. Defendant conducts business in Colorado, contracted with Plaintiffs to provide insurance in Colorado, and has committed tortious acts in Colorado.

4. The Court has personal jurisdiction over the Defendant by virtue of Defendant's operations and presence in Colorado, by its transacting business directed at Colorado, by its commission of tortious acts that caused injury and damages in Colorado, and/or by otherwise purposefully availing itself of the benefits and privileges of Colorado law by regular, continuous, and systematic contacts with Colorado.

5. Venue is proper in the District Court in and for the City and County of Denver pursuant to C.R.C.P. 98(c)(1) because Defendant GEICO is a nonresident, Denver is the county where the Defendant is found in Colorado, and Denver is the county designated in this Complaint.

## III. GENERAL ALLEGATIONS

6. On November 5, 2013, at approximately 3:19 p.m., Ms. Stewart was on her way to pick up her children from school.

7. Ms. Stewart was stopped in the left lane of northbound Pine Drive waiting in a line of cars awaiting a school bus when she was hit from behind by Ms. Agresti.

8. Ms. Agresti was negligent in the operation of her vehicle causing the collision with Ms. Stewart.

9. As a result of Ms. Agresti's negligent driving, Plaintiff Patricia Stewart sustained severe injuries requiring medical care and treatment.

10. As a direct and proximate result of the motor vehicle collision with Ms. Agresti, Plaintiff sustained permanent injuries and damages.

11. As a direct and proximate result of the motor vehicle collision with Ms. Agresti, Plaintiff Mr. Stewart sustained damages, including a loss of consortium.

12. At the time of the incident, Ms. Agresti was insured by GEICO for liability coverage.

13. At the time of the November 5, 2013 incident, Plaintiffs were also insured by Defendant GEICO for underinsured motorist coverage.

14. Prior to the November 5, 2013 car accident, Plaintiffs and Defendant GEICO entered into a contract of insurance, Policy Number 4167781709 ("the Policy"), which was in full force and effect at the time of the motor vehicle accident.

15. Under Plaintiff Stewart's contract of insurance, Defendant GEICO provided underinsured motorist coverage (UIM) and promised to pay UIM benefits to Plaintiffs as provided by the Policy.

16. The Policy provided underinsured motorist coverage to Plaintiffs in the amount of $250,000.

17. Plaintiff timely notified Defendant GEICO of the car accident and of the underinsured motorist claim.

18. Because Ms. Stewart's medical bills far exceeded the available underlying liability insurance covering Ms. Agresti for the car accident which occurred on November 13, 2014, Plaintiffs asked Defendant GEICO to pay them underinsured motorist benefits owed to them under their Insurance Policy. In doing so, Plaintiffs provided Defendant GEICO with a demand for payment accompanied by supporting medical and billing records.

19. On or about December 2, 2014, GEICO offered Plaintiffs the policy limits under Ms. Agresti applicable liability insurance policy ($100,000) to settle Plaintiffs' claim against Ms. Agresti for the car accident.

20. On December 2, 2014, Plaintiffs informed Defendant GEICO that Ms. Agresti's insurance carrier (*Also* GEICO) had offered its policy limits and requested Defendant GEICO's consent to their settling the underlying bodily injury claim against driver Agresti.

21. On December 4, 2014, Plaintiffs sent another copy of the demand and supporting medical and billing records to the GEICO insurance adjuster handling the Plaintiffs' UIM claim.

22. On December 5, 2014, Defendant GEICO provided consent to the underlying bodily injury claim settlement against driver Agresti.

23. On or about December 9, 2014, Ms. Stewart's GEICO UIM claim was reassigned to GEICO insurance adjuster Rosalinda Cruz.

24. At that same time, the new adjuster for Defendant GEICO sent Plaintiffs correspondence stating that it would take her 5 to 7 days to complete their review the claim.

25. On December 15, 2014, Defendant GEICO sent correspondence to Plaintiffs requesting, without explanation, all past medical records and reports.

26. Furthermore, GEICO requested that Ms. Stewart undergo a Medical Examination (IME) by a GEICO doctor.

27. On January 23, 2015, Plaintiffs provided Defendant GEICO with correspondence, enclosing the medical records GEICO requested, and agreeing to submit to the requested IME. At that same time, Plaintiff requested GEICO provide possible IME dates within ten days.

28. On January 29, 2015, Defendant GEICO advised Plaintiffs that Attorney Michael Simpson was retained to represent Defendant GEICO in this matter.

29. On January 29, 2015, Defendant GEICO provided no IME dates to Plaintiffs.

30. On February 9, 2015, Plaintiffs requested the status of Plaintiff's IME calendaring and again requested that an IME date be provided within the next 10 days.

31. On February 10, 2015, Defendant GEICO told Plaintiffs that additional records pre-dating the incident were needed, without an explanation as to why those records were necessary.

32. On February 10, 2015, Defendant GEICO advised Plaintiffs that GEICO would schedule the IME, but again no dates were provided.

33. On February 11, 2015, Plaintiffs told Defendant GEICO that all relevant prior medical records requested were provided to Defendant GEICO as part Plaintiffs' January 23, 2015 correspondence.

34. At this same time, GEICO was requesting records already in their possession.

35. On or about February 11, 2015, despite already providing all relevant records to GEICO, Plaintiffs delivered prior medical records to Defendant GEICO by same day special courier.

36. On February 13, 2015, Defendant GEICO told Plaintiff that Dr. I. Stephen Davis could perform an IME on March 12, 13 or 16, 2015.

37. On February 17, 2015, Plaintiffs provided Defendant GEICO a letter enclosing supplemental medical records from Whole Health Center Acupuncture & Allergy Associates in response to GEICO's request, and also informed Defendant GEICO that

Plaintiff Ms. Stewart was available on all proposed IME dates and or even sooner.

38. On February 20, 2015, Defendant GEICO requested that Plaintiffs provide medical records for 5 years prior to the incident. GEICO did so without providing Plaintiffs with any explanation as to what records they needed or the basis for evaluating additional unrelated records.

39. On March 3, 2015, Plaintiffs advised Defendant GEICO that it would provide Defendant GEICO with a signed medical records release authorization allowing GEICO to obtain their own copies of all prior medical records directly from health care providers or treaters.

40. On March 4, 2015, Plaintiffs provided Defendant GEICO with a signed medical release authorization allowing Geico to obtain its own copies of Ms. Stewart's prior medical records.

41. On March 5, 2015, Defendant GEICO unilaterally canceled Ms. Stewart's March 12, 2015, IME appointment.

42. On March 5, 2015, Plaintiffs expressed disappointment to Defendant GEICO concerning GEICO's delay in unilaterally cancelling Ms. Stewart's IME appointment, but agreed to make Ms. Stewart available on March 31, 2015, for the IME.

43. On March 24, 2015, Plaintiffs provided Defendant GEICO documentation concerning the expected cost of Ms. Stewart's lumbar fusion. At this time, Ms. Stewart's past and future projected medical treatment was in excess of $260,000.

44. GEICO was aware of Ms. Stewart's cervical and lumbar disc injuries and surgical recommendations dating back to the submission of her claim to GEICO in 2014.

45. On March 31, 2015, Ms. Stewart underwent GEICO's requested IME with I. Stephen Davis, M.D.

46. On April 6, 2015, Dr. Davis provided his IME report to Defendant GEICO, stating that Plaintiff Ms. Stewart sustained permanent injury to her cervical spine, causally related to the subject motor vehicle crash on November 5, 2013.

47. On April 14, 2015, in light of the IME and all documentation submitted to GEICO, Plaintiffs requested that Defendant GEICO pay Plaintiffs the policy limits for their UIM

coverage or provide an explanation for the ongoing delay in payment.

48. On April 24, 2015, Defendant GEICO advised that they needed additional records to submit to Dr. Davis for a supplemental report.

49. On May 22, 2015, Plaintiffs provide a letter to GEICO summarizing their correspondence with GEICO since the time their claim was submitted in 2014. Plaintiffs again requested that GEICO pay them their benefits under their policy of insurance.

50. On June 1, 2015, nearly six months (177 days) after Ms. Stewart submitted her claim for benefits under the insurance policy, GEICO admitted in writing that Plaintiffs were entitled to payment of benefits under their policy of insurance dating back to the time they submitted their claim.

51. At the time of filing this Complaint, Ms. Stewart had submitted her claim to GEICO 181 days ago.

52. At the time of filing this Complaint, GEICO has not paid any of Ms. Stewart's benefits under her policy of insurance with GEICO.

## IV. FIRST CLAIM FOR RELIEF
(Underinsured Motorist Claim/ Breach of Contract)

53. Plaintiffs incorporate the allegations set forth above as though fully set forth herein.

54. The Plaintiffs recovered from Ms. Agresti $100,000, which is the maximum amount of liability insurance coverage available from Ms. Agresti's insurance coverage for the car accident.

55. Ms. Agresti's policy limits did not fully compensate Plaintiffs for their injuries, damages, and losses sustained in the November 5, 2013 car accident.

56. Plaintiffs are entitled to recover their underinsured motorist benefits provide in their insurance policy with Defendant GEICO.

57. Plaintiffs and Defendant GEICO entered into a contract as identified herein; whereby, Defendant GEICO provided UIM coverage to Plaintiffs and promised to pay UIM benefits to Plaintiffs in exchange for Plaintiffs' payment of premiums.

58. At the time of the incident, GEICO insured Plaintiffs for $250,000 in UIM benefits.

59. Defendant GEICO has breached its contract of insurance by failing to pay UIM benefits to Plaintiffs.

60. As a direct and proximate result of Ms. Agresti's negligence and as a direct and proximate result of the damages sustained by Plaintiffs in the November 5, 2013 incident, and as required by C.R.S. §10-4-609 and Defendant Geico's policies, and as a direct result of Defendant Geico's breach of contract, Plaintiffs have suffered damages and Defendant Geico is liable to pay UIM benefits to Plaintiffs to compensate them for their injuries, damages, and losses.

## V. SECOND CLAIM FOR RELIEF
(Common Law Bad Faith Breach of Insurance Contract)

61. Plaintiffs incorporate the allegations set forth above as though fully set forth herein.

62. Plaintiffs and Defendant GEICO entered into a contract for insurance as identified herein; whereby, Defendant GEICO provided underinsured motorist coverage to Plaintiffs and promised to pay UIM benefits to Plaintiffs in exchange for Plaintiffs' payment of premiums.

63. Defendant GEICO acted unreasonably in failing to timely and reasonably pay the UIM benefits to Plaintiffs arising from the injuries, damages, and losses sustained by Plaintiffs in the November 5, 2013 incident, and by continuing to delay and deny payment.

64. Defendant GEICO's conduct described above was unreasonable and further violated C.R.S. § 10-3-1104(1)(h).

65. Defendant GEICO knew that its conduct described above was unreasonable or recklessly disregarded the fact that its conduct described was unreasonable.

66. As a direct and proximate result of Defendant GEICO's bad faith conduct, Plaintiffs have sustained injuries, damages and losses.

## VI. THIRD CLAIM FOR RELIEF
(Statutory Claim for Damages For Unreasonable Delay and Denial of Benefits Under C.R.S. § 10-3-1115 and 10-3-1116)

67. Plaintiffs incorporate the allegations set forth above as though fully set forth herein.

68. Plaintiffs and Defendant GEICO entered into a contract for insurance as identified herein; whereby, Defendant GEICO provided UIM coverage to Plaintiffs and promised to pay UIM benefits to Plaintiffs in exchange for Plaintiffs' payment of premiums.

69. Pursuant to C.R.S § 10-3-1115, Defendant GEICO cannot unreasonably delay or deny payment of UIM benefits to Plaintiffs.

70. Defendant GEICO violated C.R.S. § 10-3-1115 by delaying and denying payment of UIM benefits it owes to Plaintiffs for the injuries, damages and losses suffered in the November 5, 2013 incident without a reasonable basis for its delay or denial.

71. Defendant GEICO acted unreasonably in its investigation and its dealings with its insured Plaintiffs.

72. Pursuant to C.R.S. § 10-3-1116, Plaintiff is entitled to recover reasonable attorneys' fees, court costs and two times the covered benefits as a result of Defendant GEICO's unreasonable delays.

**WHEREFORE,** Plaintiffs demand judgment against the Defendant, including benefits owed to Plaintiffs for a breach of contract under the policies of insurance issued to Plaintiffs by Defendant in an amount to be determined at trial; damages for common law bad faith including economic and noneconomic damages, and statutory damages as provided by C.R.S. §10-3-1116, including costs, attorneys' fees, and two times the covered benefits, as well as pre-judgment interest, post-judgment interest, loss of consortium and such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

**PLAINTIFF DEMANDS A TRIAL BY JURY TO SIX (6) PERSONS ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 5th day of June, 2015.

          **BURG SIMPSON**
          **ELDREDGE HERSH & JARDINE, P.C.**

          *(Original signature on file at Burg Simpson Eldredge Hersh & Jardine, P.C.)*

          /s/ Reeves Whalen
          Reeves Whalen, #40189
          Jacob M. Burg, #47766
          *Attorneys for Plaintiff*

**Plaintiff's Address**
21671 E. Tallkid Ave
Parker, CO 80138